Oreen, J.
delivered the opinion of the court.
This is an attachment bill, filed by virtue of the act of 1835-6. ch. 43, C. &. N. 106, and 1837-8, ch. 166, sess. acts, 234.
The affidavit does not state the indebtment of the defendant, but states that “the allegations contained in the foregoing bill, so far as they are stated on his own knowledge are true, and so far as they are stated on the information of others he believes to be true.”
The bill sets out particularly the various items in which it is alleged the defendant Eaton is indebted to the complainant.
The proviso to the first section of the act of 1835-6 requires *347 that the complainant shall make affidavit, that the defendant is indebted as charged in the bill, and is a non-resident. It is then the duty of the officer having the attachment, to levy it, and take into his possession so much of the personal property of the defendant as is necessary to satisfy the complainant’s claim. The act of 1837-8, ch. 166, is amendatory of the above recited act; and among other things, in the third section requires that “the complainant shall set forth in his bill the amount of his demand, and the Judge in his fiat shall direct so much of the property and effects of the defendant to be attached as is sufficient to satisfy such debt and costs according to the complaint, and if the sheriff shall make an excessive distress or levy, he shall be liable therefor.” Whatever, therefore, may be the meaning of the proviso, the first section of the act of 1835-6 as to the statements it required a party to make in his affidavit, it is clear that since the act of 1837-8, it need only verify the facts stated in the bill.
The object of the legislature, in requiring that the amount of the demand should be particularly set forth, was that an excessive levy need not be made. This is shown by the proviso to the act of 1835-6, where the officer is required to attach so much as is sufficient to satisfy the demand. And this is more clearly shown in the third section of the act of 1837-8, where the Judge is required, in his fiat, to direct so much of the property and effects of the defendant to be attached as is sufficient to satisfy the debt; and it is declared that the sheriff shall be liable, if he makes an excessive levy.
This being clearly the only reason for requiring that the amount due the complainant should be stated so particularly, it is plain that the statement in the bill, which is required by the third section of the act of 1837-8, is all that is necessary to accomplish that end, and is all the legislature designed should be done. When the bill is sworn to, the facts, verified by oath, are as distinctly stated as if the sum due were again set forth in the affidavit.
We think, therefore, that it is not necessary that the affidavit should state the sum in which the defendant is indebted to the complainant.
*348 It is insisted, that the defendant Eaton was not a non-resident of the State at the time the bill was filed. The proof is, that he had been Governor of Florida, residing in that Territory; Minister of the United States to Spain, residing some years at Madrid, and was, at the time this bill was filed, living with his family in the District of Columbia. Mr. Hall states in his deposition, that the defendant Eaton, in the autumn of 1840, gave direction for the transfer, from Nashville to Washington, of various articles of household furniture, and a female slave to serve him as a cook; and that he removed from Nashville in November or December, 1840, and took up his residence at Washington. The witness not only states the fact, that the defendant's residence was in Washington, but he couples with that statement, a detail of circumstances from which the court can see that the intention of the defendant, most probably, was to make his permanent domicil at that place. But domicil is a term of more extensive signification than residence; for to constitute a domicil, two things must concur: first, residence; and secondly, the intention of making it the home of the party. Story’s Conflict L. 344. And we think both these facts concurred at the time this attachment was sued out.
But we consider the discussion of these preliminary questions to have been unnecessary, because they are both matters in abatement, of which the defendant should have availed himself by proper defences, on his first appearance in the cause.
But he has answered the bill, making an issue upon the merits; and this is a waiver of all objections to the jurisdiction, except such as show that the matters upon which a decree is sought are not fit for the cognizance of a court of chancery.
We now come to the consideration of the questions upon which depend the merits of the cause.
■ The bill charges, that in 1836, Allen A. Hall, John H. Eaton and Edward Breathitt entered into a partnership in a distillery in Davidson. In 1837, Edward Breathitt died. Hall and Eaton carried on the partnership; and in the prosecution of their business, executed various notes, which were endorsed, for their accommodation, by the complainant: notes were executed by other persons for the benefit of Hall and Eaton, and at their *349 request endorsed by the complainant, for their accommodation. The complainant has paid, and otherwise so arranged as to satisfy the holders of these notes, and has taken them up; whereby Hall and Eaton are indebted to him for the same, amounting to upwards of twelve thousand dollars.
Eaton insists that there was no partnership between himself and Hall,'after the death of Breathitt; and as all the notes mentioned in the bill were executed subsequent to that time, he is not responsible for any part of the debt claimed by complainant. .
This brings us to the consideration of the facts in relation to .the partnership. By the articles between Hall, Eaton and Breathitt, their partnership was entered' into the 30th day of May, 1836, and was to expire the 14th of February, 1839. Breathitt died the 31st of January, 1837. Eaton being at that time at Madrid, in Spain, various letters from Eaton to Hall were produced and read in evidence in the court below, the first dated the 10th of March, 1838, and the last the 20th of October, 1838.
These letters were written in relation to the business of the distillery; speak of Breathitt’s de'ath, and of continuing the concern; and advise as to its future management, and as to the means for raising funds to carry it on.
In the letter of the 10th of March, 1838, he informs Hall that he had made arrangements to pay the note of $3,500; urges him to press every sail to the breeze to “place our whiskey ship in some better trim;” and advises, that an effort be made to borrow 10,000 dollars for the concern; authorizing Hall, in addition to the partnership property, to pledge for that purpose a portion of his private estate.
In a letter dated 25th March, Hall is again advised to borrow 8 or 10,000 dollars, at one and two years. In the letter of the 2d June, the wish is expressed that he were at home, to “aid, assist, and think of matters,” but would not come until Hall should give a more flattering representation of the condition of things. “The rest,” he says, “must repose with your own good sense, and judgment, and prudence, which, I crave to say, ought to be placed in full requisition; or, if not, both you and *350 your friends will be crippled, if not destroyed.” In a letter of the 6th of October, Hall is told, “the winter is coming on, and you will need grain to go ahead. On this day week I will have arranged and forwarded to H. Toland $3000 for you.”
In the letter of. 20th October, 1838, he informs Hall, that he had forwarded to H. Toland $2,500, and adds: “The season for your action is at hand, and it is sent to enable you to get along. I send this amount, that our affairs may go ahead; and to this end, lay out 1,800 or 2,000 dollars in rye at least.”
These extracts, which might have been greatly extended, establish beyond any doubt, the existence of a partnership after the death of Breathitt. The argument, that these letters are to be regarded in the light of a proposition to Hall, which there is no evidence he ever accepted, when we examine their true character, is entitled to no weight. The letters acknowledge the receipt of communications from Hall upon the subject; and, instead of holding the language of a proposal, they every where speak of a subsisting business, understood by the parties, and in which the writer’s interests were deeply involved.
The truth appears to be, that after the death of Breathitt, the surviving partners chose to go on with the business, without settling up the old concern, and without any definite stipulations as to their rights and liabilities. Whether they were in error, as to the effect of Breathitt’s death upon the rights and liabilities of the parties, we are not informed, nor can it make any difference as to their liability to third persons.
But it is said, that a portion of the notes set out in the bill, which were executed by Hall, in the name of Hall and Eaton, was made to renew notes which the old firm of A. A. Hall & Co. had contracted before the death of Breathitt; that Foster, the endorser, was aware of this'fact, and that Eaton is not bound for their payment. The legal principles which govern in partnership transactions of this sort, do not seem to be matter of controversy between the counsel; and it is not contended by the counsel for complainant, that a partner can bind his co-partner by a contract in the partnership name, to pay the debt of a third person, for which the parties were not previously bound.
*351 If Eaton had not been a partner in the firm of A. A. Hall& Co. and Hall had paid the debts of that firm, by securities executed in the new partnership name of Hall & Eaton, most certainly Eaton would not have been bound; and such notes would have extinguished the old debt of A. A. Hall & Co. and the creditor would have been left with his remedy against Hall only. But the situation, and consequently the liability, of the parties are very different, when we come to look at the facts of the case. Here, the firm of A. A. Hall & Co. owes debts, and Hall & Eaton, the two surviving members of the firm, after its dissolution by the death of Breathitt, carry on the same business, by the use of the property and effects of the old concern; and Hall, the acting partner, executes the notes of the firm, to take up the notes of the old concern. Both the partners of the new firm were bound for the debts of the old one; and although these notes were given in a different partnership style, still they are the undertaking of persons who were equally bound by the old note; so that, in fact, they are the notes of Hall & Eaton, made to renew notes which both Hall & Eaton previously owed. It is manifest, that the principle upon which the defendant has so much insisted, has no application to this case. But it is insisted, that if Eaton became the partner of Hall after the death of Breathitt, he did not become such partner until his letter of the 10th of March, 1838, reached Hall, and that the partnership expired the 14th of February, 1839, that being the period limited for the partnership of A. A. Hall & Co.
It has been previously shown, that the letters of Eaton are not in the nature of a proposition to Hall for a partnership; but contain a recognition of rights and liabilities in regard to the business, as it had been conducted from the period of Breath-itt’s death. As to the period of its expiration, the articles of the old firm could have no effect: for although it was the same business continued, yet it was not continued by virtue of the old contract, but grew out of the acts of the parties, and their mutual recognition of the existence of such a partnership. It cannot depend, therefore, on the limitation contained in the articles creating the firm of A. A. Hall & Co. for its duration, but can only be dissolved by some subsequent fact, which the law *352 holds will put an end to a partnership: and in this way the defendant Eaton most certainly understood the matter. How else shall we account for the advice in his letter of March, 1838, that Hall should “keep the year’s supply for rye.” If he understood that the partnership would expire in February, 1839, it is difficult for us to understand, why, in a letter written less than one year before that time, he should have urged the propriety of keeping a two year’s supply of rye. Again, in his letter of the 20th of October, 1838, less than four months from the period it is said the partnership was to terminate, he says, “1 ay out $1800 or $2000 in rye, at least.” This he wished to be done, that their affairs might go ahead. It is impossible to conceive that while giving these directions, the writer could have contemplated the termination of the partnership in February, 1839.
But it is insisted, that the bill filed by Mrs. Breathitt against Hall & Eaton, for a settlement of the firm of A. A. Hall & Co. and the attachment of the partnership effects by order of the Chancellor, wrought a dissolution of the firm of Hall & Eaton.
We are unable to perceive the force of this proposition. Certainly, the fact that a creditor files a bill against a firm, and causes its property to be attached, can have no effect upon the legal relation of the members of the firm. It may interrupt the operation of their business; but it cannot dissolve the partnership.
If Mrs. Breathitt had been a member of the firm, and as such had filed her bill against the other partners for an account, the case would have been entirely different. But here she is a creditor; the representative of one of the partners in the late firm of A. A. Hall & Co.; and as such her bill is filed against the surviving partners for an account of that business. However, therefore, it may interrupt the business of Hall & Eaton, by the attachment of their effects, it cannot alter the relation of partners, nor take away the power of each to bind the firm, by a contract in the name and for the benefit of the partnership.
We conclude, therefore, that the defendant Eaton was the partner of Hall from the death of Breathitt until Eaton denied his responsibility for the notes, in the fall of 1840, or until Mrs. Breathitt and Hall joined in the application for the sale of the *353 effects. It follows, that he is responsible as paitner, for all the notes which were executed by Hall, in the name of the firm of Hall & Eaton, that are specified in the complainant’s bill; and as the complainant has satisfied and taken up these notes, he has become himself the creditor, and the defendant Eaton is his debtor.
We come next to consider the questions which are presented in this bill, in relation to those notes which were executed in the name of Hall alone, and in the name of other persons, but which the bill alleges were executed by the parties and endorsed by the complainant for the benefit of and at the request of the firm.
In the case of Emmerson & Crouch vs. Bowman. (3 Hump. Rep. 209,) this court held, that where a note is executed in the name of one member of a firm, as a .general rule, the other members of the firm will not be bound thereby; that to bind them all, it must be executed in the firm name, unless it be shown that credit was given to the firm and that the money went into its business. The principles announced in that case are supported by the authorities: Judge Story, (Com. Part. s. 102,) speaking of the power of a partner to bind his copartners, says: “All such contracts and engagements, acts and things, he has authority to make and do in the name of the firm; and, indeed, in order to bind the firm, they must ordinarily be made and done in the name of the firm; otherwise they will bind the individual partner only who executes them as his own private acts, contracts, or other things.” Again, s. 140, he says: “If a person should advance money for a firm, and yet take the security of one partner therefor, the security would bind that partner only; and, indeed, if the separate security is knowingly taken upon advances for the firm, it will ordinarily be treated as an election by the creditor to absolve the partnership from responsibility, and to confine the credit to the partner only; nor will it make any difference in such a case, that the money has not only been borrowed, but has been applied to partnership purposes. On the other hand, if money is actually borrowed on the credit of the firm, in the course of the business of the firm, *354 it will make no difference in the liability of the other partners, that it has been misapplied by the borrowing partner.”
In Collyer on Partnership, (ch. 2, s. 2, p. 262,) it is said: “If a person advance money even for the purposes of a firm, but takes the separate security of one partner, the partnership not. being carried on in that partner’s individual name, the contract as evidenced by such individual security is several, and a several action only can be brought upon it.” Again, at the same page, it is said: “If a person advance money to the firm, and take the separate bill of one partner, he cannot sue the firm on that security, although he may possibly succeed in an action against the firm for money advanced on the bill: the contract is several, and the individual partner alone can be sued.”
It is clear, from these authorities, that where money is borrowed for a firm, and the individual note, or bill of one partner only, is taken, that partner alone will be responsible upon the note or bill; and in order to hold the firm liable for money advanced, it must appear that it was obtained for the firm, and on the credit of the firm; otherwise “it will be treated as an election by the creditor to absolve the partnership from responsibility, and to confine'the credit to that partner only.”
In relation, therefore, to the notes upon which Eaton’s name does not appear, he cannot be held directly responsible. But as the complainant has paid those notes to the creditors who advanced the money, having been liable therefor as endorser, he insists that he thereby became a creditor of the firm for money advanced. The question then arises, was this money advanced for the firm and upon its credit?
Upon this subject we have only the testimony of Hall, one of the partners. It is unnecessary to examine and criticise his evidence, as we are of opinion he is not a competent witness to prove the facts in question. Hall is clearly responsible to the complainant upon these notes. He is a party to them, in his individual character, and from any thing that appears, (unless we look to his testimony,) the complainant endorsed them upon his individual' responsibility alone.
If he is permitted to prove that the money was advanced up *355 on the credit of the firm, he thereby shifts the responsibility of one half this debt from his own shoulders and places it upon the defendant Eaton: and if Eaton should be compelled to pay it, how is he to recover it back if by Hall’s testimony he shall'be improperly charged? Clearly he would have no remedy: true, if he could-prove that Hall had sworn falsely, and that the money was not obtained for partnership purposes and upon the credit of the firm, he might recover the amount from Hall in an action for money had and received. But where is he to get the proof? If there was other testimony than that of the parties, there would have been no necessity for resorting to Hall’s evidence in this case. This question is in principle precisely the same, decided by this court, in the case of Vanzant vs. Kay. (2 H. R. 109.) It is true, the court say in that case,' that where the partnership is proved by other evidence or admitted, the plaintiff may call one of the partners to prove other parts of the case. The reason given, is, that “in such case the witness is interested to defeat the plaintiff’s claim, because he will be liable to contribution, should there be a judgment against his co-partner.”
But so far as these notes are concerned, it is the same thing as if the partnership had not been proved by other evidence.
If a suit had been brought at law against Eaton upon these claims, for so much money advanced to the firm, no one would contend that Hall could be a witness to prove they were partnership transactions. But can the fact that they are brought before this court, in connection with other claims, in which the partnership is established, make any difference? Surely not. If Hall were competent in this case, every partner might make his copartners responsible for his private debts, by his own evidence, provided he and the creditor were base enough to combine for that purpose.
If, therefore, in any state of the proof, Eaton could be made directly liable to the complainant, (of which there is gome doubt) it is clear that upon the competent evidence in this record, he cannot be regarded as the debtor of the complainant, so as to authorize a recovery in this attachment bill.
Hall has a lien upon the partnership effects for, the payment *356 of the debts of the firm; and Foster, having paid these notes, may work out his equity against Eaton, through Hall. Story on Partnership, s. 326.
We are of opinion the decree is erroneous, and that it be reversed, and reformed according to the principles of this opinion.